**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3971
_____

UNITED STATES OF AMERICA

v.

MARC HUBBARD,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 15-CR-00096-JS-1)
District Judge: Hon. Juan R. Sanchez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on October 3, 2017
_____

Before: SHWARTZ and ROTH, *Circuit Judges*, and PAPPERT, *District Judge*[*]

(Opinion filed: January 29, 2018)

_____

OPINION[**]
_____

---

[*] Honorable Gerald J. Pappert, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PAPPERT, *District Judge*

Appellant Marc Hubbard pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343 and seven counts of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 1343 and 2. He was subsequently sentenced to 78 months in prison. Hubbard appeals, claiming errors at both his guilty plea and sentencing hearings. None of his claims have merit and we will affirm the conviction and sentence.

I

Hubbard was indicted in March of 2015 for defrauding investors of over $2.1 million by falsely advertising himself and his company, SDI, as a successful concert promotion business. He promised investors returns of approximately 25 – 30% on their short-term investments in SDI and, when making his sales pitch, showed prospective investors fraudulent financial documents and falsely assured them that their money would be secured by a $10 million surety bond.

On June 30, 2016, Hubbard pled guilty, without a plea agreement, to all counts in the Indictment. During a lengthy hearing, the District Court questioned Hubbard on numerous issues, including his physical and mental condition and whether he had consulted with his lawyer regarding the Government's case against him and his decision to plead guilty. The District Court also explained the potential sentencing implications of that decision. After an extensive colloquy, the District Court concluded that Hubbard was competent to enter a plea, that his decision to do so was knowing, intelligent and voluntary, and that there was a sufficient factual basis for the plea.

On October 11, 2016, the District Court held a nearly three-hour long sentencing hearing, at the conclusion of which Hubbard was sentenced to 78 months in prison, three years of supervised release and ordered to make restitution in the amount of $1.7 million. After resolving—to counsels' satisfaction—any objections to the Presentence Investigation Report ("PSR"), the District Court determined that the appropriate sentencing guideline range was 63 – 78 months. The PSR calculated a total offense level of 27 and a criminal history category II, resulting in a guideline range of 78 – 97 months. The District Court, albeit reluctantly, reduced the offense level to 25 for Hubbard's acceptance of responsibility but did not grant Hubbard the additional one level reduction for timeliness because Hubbard failed to provide the Probation Office with the documents and information necessary to assess his finances. The District Court imposed a sentence at the high end of the 63 – 78 month guideline range.

Hubbard argues that his guilty plea should not have been accepted because (1) it was entered with the faulty expectation that his sentencing guideline range would be 33 – 41 months and (2) he pled guilty reluctantly. Hubbard also contends that he should be resentenced because the District Court (1) erroneously considered his guilty plea for similar conduct in a case pending in the District Court of Hawaii; (2) failed to seal the courtroom, purportedly curtailing his presentation of information to mitigate his sentence; and (3) effectively denied him the right to allocute by repeatedly interrupting him.

II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. *See United States v.*

*Moreno*, 809 F.3d 766, 773 (3d Cir. 2016); *United States v. Schweitzer*, 454 F.3d 197, 202 (3d Cir. 2006). All issues on appeal are subject to plain error review because none were raised before the District Court. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008). To find plain error, we must find that (1) an error was committed, (2) the error was plain and (3) it affected the defendant's substantial rights. *See Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)); *United States v. Lessner*, 498 F.3d 185, 192 (3d Cir. 2007) (citing *United States v. Stevens*, 223 F.3d 239, 242 (3d Cir. 2000)). The decision to correct an error not raised before the trial court is discretionary and should be exercised "'only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Lessner*, 498 F.3d at 192 (modification in original) (quoting *Stevens*, 223 F.3d at 242); *see also Johnson*, 520 U.S. at 467 (quoting *Olano*, 507 U.S. at 732).

III

In pleading guilty, a criminal defendant waives various constitutional rights, such as the right to a trial by jury. Thus, a guilty plea must be made "'voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences.'" *Lessner*, 498 F.3d at 192 (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). Federal Rule of Criminal Procedure 11(b) governs the consideration and acceptance of guilty pleas and "'is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.'" *Id*. at 193 (quoting *McCarthy v. United States*, 394 U.S. 459, 465 (1969)). Rule 11(b)(1)

requires the sentencing judge to address the defendant in open court and determine that the defendant understands, among other things, "any maximum possible penalty" he faces, the court's obligation to calculate the applicable sentencing guideline range, and to consider that range together with the 18 U.S.C. § 3553(a) factors in arriving at the appropriate sentence. *See* Fed. R. Crim. P. 11(b)(1). Rule 11(b)(2) requires the judge to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises . . . ." Fed. R. Crim. P. 11(b)(2).

To successfully argue that his guilty plea was not knowing and voluntary due to plain error, the "defendant must prove that, were it not for the plain error committed by the District Court at the time of his plea . . . he would have pled not guilty[,] . . . and not merely that there *may or may not* have been a prejudicial impact and that he *might* have not pled guilty." *United States v. Dixon*, 308 F.3d 229, 234 (3d Cir. 2002) (emphasis in original).

A

The District Court's fifty-minute guilty plea colloquy complied with Rule 11(b). Most relevant to this appeal, the District Court ensured that Hubbard's plea was knowing and voluntary and that Hubbard understood the maximum possible penalty he faced, including imprisonment, fine and a term of supervised release. Hubbard was told that he was facing a total maximum penalty of 160 years in prison, and the District Court questioned Hubbard to ensure that he understood the significance of this potential amount of incarceration:

5

**Q:** Do you understand that that is your maximum exposure as a result of your guilty plea in this case?

**A:** Yes, Your Honor.

**Q:** That's a lot of jail time. Any questions or reservations about pleading guilty understanding that?

**A:** No, Your Honor.

**Q:** Have you thought about your options in this case long and hard?

**A:** Yes, Your Honor.

(J.A. 62–63.) Hubbard was also told that the district judge was responsible for determining the appropriate sentence and that, in deciding Hubbard's sentence, the court would consider the advisory sentencing guidelines along with the factors outlined in § 3553(a).

Hubbard claims that his plea was neither knowing nor voluntary because the Government led him to believe that his sentencing guideline range could be as low as 33 – 41 months.[1] "However, all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate 'best guess' as to what his/her actual sentence will be; nor could it,

---

[1]     Hubbard relies on *United States v. Palladino*, 347 F.3d 29 (2d Cir. 2003), where the Second Circuit found that the Government's pursuit of a six point enhancement at sentencing was inconsistent with the language and spirit of the parties' plea agreement, for the proposition that a higher guideline range at sentencing can invalidate a plea. Here, Hubbard entered into an open plea agreement and thus *Palladino*, which was based on the District Court's interpretation of the agreement between the parties as reflected in the plea agreement, does not support Hubbard's position.

given the vagaries and variables of each defendant's circumstances and offending behavior." *United States v. Mustafa*, 238 F.3d 485, 492 n.5 (3d Cir. 2001) (citing *United States v. Cleary*, 46 F.3d 307, 311 (3d Cir. 1995)). Here, Hubbard understood full well that he was potentially facing "a lot of jail time," including up to 160 years in prison, and thus was aware of the consequences of his plea. (J.A. 62–63.)

Hubbard discounts this exchange with the District Court, asserting that as a "practical matter," he was "focused on what sentence he would likely receive." (Reply Br. at 3.) Whatever sentence Hubbard felt he was "likely" to receive is legally irrelevant and in any event was something he knew to be an estimate, which could be accurate or not. The Government's representation that Hubbard's range could be as low as 33 – 41 months (if he were given a three point reduction for timely pleading guilty and fell into criminal history category I), though inaccurate, did not vitiate the District Court's dutiful compliance with the requirements of Rule 11 nor did the imposition of a higher sentence (within the guideline range) rise to the level of reversible error. *See United States v. Oyegbola*, 961 F.2d 11, 14–15 (1st Cir. 1992) (noting that the Government's incorrect estimate of a likely sentence is not a basis to vacate a guilty plea); *Mustafa*, 238 F.3d at 492 (concluding that any misrepresentations regarding sentencing calculations "were dispelled when [the defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum"). Further, the Government was clear that a base offense level of 23 was merely "a conservative estimate of what we believe the—at least sort of the very base offense level would be"

7

and the District Court made clear that the offense level could be higher or lower than the Government's estimate. (J.A. 66.)

B

Hubbard also claims that the District Court should not have found that his plea was knowing and voluntary or sufficiently supported by the facts because he was reluctant to accept responsibility for what he had done and the District Court failed to sufficiently explore his medical condition, specifically anxiety. Both of these contentions are belied by the record.

After the prosecutor stated the factual basis for the plea, the District Court asked Hubbard if the account was accurate, to which he replied "substantially." The judge followed up, asking Hubbard what he meant by "substantially" and whether he was guilty of committing the charged crimes—Hubbard responded that the account was accurate and that he was in fact guilty. (J.A. 76–77.)

Hubbard argues that this exchange shows that he "wavered" with respect to the accuracy of the facts supporting his plea such that the District Court should have refused to accept it. We disagree for two reasons. First, Hubbard acknowledged that he read the Government's Plea Memorandum containing the factual basis for the plea, reviewed it with his lawyer (with whom he was satisfied), that he was pleading guilty of his own free will and was doing so because he was guilty. (J.A. 55–59; 72–73, 79.) Second, when the District Court sought to clarify what Hubbard meant by substantially, Hubbard

8

unequivocally admitted that the recitation of the facts was accurate and that he was guilty of committing the charged crimes. (J.A. 76–77.)[2]

Further, the District Court properly explored Hubbard's competency and concluded that his anxiety did not inhibit his capacity to enter a guilty plea. During the plea hearing, Hubbard informed the judge that he suffered from anxiety as a result of an accident in 2009 in which he was electrocuted. The District Court asked a series of follow-up questions to understand the nature of the injury, the treatment received, and any symptoms that Hubbard may still be experiencing some seven years later. Hubbard told the judge that although he was unable to function normally for about a month after the accident, his only remaining symptom from the trauma is anxiety. Hubbard said that he has a prescription for anxiety medication but that he can engage completely in everyday functions and that the medication is merely to help calm his nerves. At the time of the plea hearing, Hubbard had not taken the medication for three or four days. Moreover, he stated that he was "absolutely fine" (J.A. 53), an assurance that undercuts his contention on appeal that the judge should have adjourned the hearing and ordered a medical or psychological examination, (Appellant Br. at 25).

_____

[2] Hubbard contends that the District Court itself acknowledged that he was reluctant when the Court quipped that Hubbard's acceptance of responsibility was "like pulling teeth." (Appellant Br. at 25 (brackets omitted).) The District Court's "pulling teeth" comments were directed at Hubbard's failure to provide necessary financial documents to the Probation Office, no more. (*See* J.A. 205, 230.)

IV

Hubbard also argues that he should be resentenced because of errors committed by the District Court during the sentencing hearing. His arguments are again controverted by the record.

A

Hubbard claims that the District Court improperly considered facts at sentencing that were not supported by the record. Specifically, he believes the District Court erred when, in assessing the 18 U.S.C. § 3553(a) factors, the District Court considered the fact that the week before his sentencing in this case, Hubbard pled guilty in a separate case in the District of Hawaii.

The PSR, revised on September 20, 2016, noted that Hubbard was arrested on November 8, 2012 and was pending trial on wire fraud charges in the District of Hawaii for allegedly engaging in a scheme to defraud the University of Hawaii and others by promoting a concert through the use of materially false or fraudulent representations. At the sentencing hearing, Hubbard's counsel informed the District Court that Hubbard pled guilty the previous week to the Hawaii charges, which counsel acknowledged involved "similar types of conduct," "the concert promotion business," and the use of Hubbard's sham company, SDI. (J.A. 233.) This information was thus plainly supported by the record and relevant to the District Court's assessment of the 18 U.S.C. § 3553(a) factors and it was not error, plain or otherwise, for the District Court to consider it.

10

B

Hubbard's remaining arguments concern his right to adequately present mitigating information at his sentencing hearing. Federal Rule of Criminal Procedure 32 governs sentencing and requires, *inter alia*, that the District Court provide both defendant's counsel and the defendant an opportunity to address the court and present any mitigating information. Fed. R. Crim. P. 32(i)(4)(A). A criminal defendant's right to allocution is not a constitutional one, but it is a deeply rooted legal tradition that Congress saw fit to codify in Rule 32. *See United States v. Ward*, 732 F.3d 175, 180–81 (3d Cir. 2013). The right is not unlimited, however, and sentencing judges "ha[ve] always retained the discretion to place certain restrictions on what may be presented during an allocution." *Id*. at 182.

When conducting a plain error review "in the context of violations of the right of allocution, 'as a general matter . . . prejudice should be *presumed* whenever the opportunity exists for this violation to have played a role in the district court's sentencing decision.'" *United States v. Paladino*, 769 F.3d 197, 201 (3d Cir. 2014) (emphasis in original) (quoting *United States v. Adams*, 252 F.3d 276, 289 (3d Cir. 2001)). Further, the "discretionary element in the plain error analysis is satisfied where a violation of the right of allocution has been established." *Id*. at 201–02.

Both Hubbard and his counsel had a full and fair opportunity to present mitigating information at sentencing. Hubbard's attorney argued several factors to the District Court that she believed warranted leniency, such as his role as a father and husband. Further, Hubbard himself engaged in a fulsome allocution.

11

Hubbard claims the District Court limited his ability to present mitigating information by refusing to seal the courtroom during the sentencing hearing. Shortly after the hearing began, Hubbard's counsel requested a sidebar. She informed the District Court that an individual against whom Hubbard had cooperated and who had allegedly threatened Hubbard was present in the courtroom. Counsel stated that she intended to discuss the details of Hubbard's cooperation with the Government and ask the District Court to consider it in the § 3553(a) analysis, even though the Government had not filed a motion for departure for substantial assistance under section 5K1.1 of the sentencing guidelines. Counsel was concerned that this person's presence would limit her presentation. She stated that she neither wanted the individual removed nor the sentencing continued, but suggested that the judge seal the courtroom. The District Court responded, and counsel agreed, that it could be worse for the defendant to seal the courtroom with the individual there.

The District Court then appropriately denied the request. The person was a victim of Hubbard's fraudulent conduct, had been notified of the proceeding and had a right to be present and be heard. *See* 18 U.S.C. § 3771; Fed. R. Crim. P. 32(i)(4)(B). In fact, his lawyer spoke on his behalf regarding the effect of Hubbard's fraudulent conduct. Moreover, to address counsel's concern, the District Court allowed her to make any arguments regarding cooperation at sidebar and told her the information would be taken into account in the Court's § 3553(a) analysis. Hubbard's attorney told the judge that Hubbard consented to wear a wire during phone conversations and recorded various other

conversations in an attempt to gather information against certain targets. When explaining his consideration and analysis of the factors under § 3553(a), the District Court stated that he had considered counsel's request for a downward variance, including the discussion at sidebar. (J.A. 265.)

ii

Lastly, Hubbard argues that the District Court effectively denied his right to a meaningful allocution by interrupting and questioning him. Hubbard relies on the Second Circuit's decision in *United States v Li*, 115 F.3d 125 (2d Cir. 1997). The facts of this case, however, are starkly different from those in *Li*, where the sentencing judge was dismissive of the defendant throughout his allocution. *Id*. at 131–33. In that case, the judge told Li that he was not going to listen to a lengthy allocution and repeatedly limited the amount of time that the defendant could speak, ultimately ending the allocution, stating that if the appeals court disagreed with his conduct, they could "send it back to me and tell me how long I have to listen." *Id*. Here, the District Court engaged in a substantive colloquy with Hubbard, seeking clarification on his explanations and exploring the veracity of his justifications for his conduct. (*See, e.g.*, J.A. 245, 250, 252.) *See United States v. Covington*, 681 F.3d 908, 910 (7th Cir. 2012). Notably, the District Court *did not* terminate Hubbard's allocution as was done in *Li*— here, at the advice of his counsel, Hubbard ended his allocution. (J.A. 254.) Hubbard thus had a meaningful opportunity to present mitigating information as required by Rule 32.

## V

For the foregoing reasons, we will affirm Hubbard's conviction and judgment of sentence.