**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ELSIE TRUJILLO,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 19-2088
(D.C. No. 2:15-CV-00936-KRS)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **HARTZ**, Circuit Judges.
_____

Elsie Trujillo appeals from the district court's decision affirming the

Commissioner of Social Security's denial of her applications for disability insurance

benefits and supplemental security income. Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we affirm the district court's judgment.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I

Trujillo alleged a disability onset date of December 21, 2011.[1]  She had last worked in March of 2010.  After her applications were denied initially and on reconsideration, she requested a hearing before an administrative law judge ("ALJ").  At the hearing, Trujillo testified regarding extreme physical limitations that she attributed to suffering from daily, universal pain.  She stated that she could stand for an hour at most, walk for about two hundred feet at one time, and lift about two pounds with some difficulty.  She also indicated that she needed to change her position after sitting for only twenty minutes.  Trujillo rated the severity of her pain on a typical day as seven or eight on a scale of one to ten.

The ALJ found that Trujillo has the following severe impairments:  chronic venous insufficiency with history of deep vein thrombosis ("DVT") on chronic Coumadin therapy, early degenerative disc disease of the lumbar spine, mild obesity; obstructive sleep apnea, fibromyalgia, chronic pain syndrome, migraine headaches, mild recurrent depression, post-traumatic stress disorder, and alcohol abuse.  Although these impairments could reasonably be expected to cause some of Trujillo's alleged symptoms, the ALJ determined that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.

---

[1] Trujillo had been denied disability insurance benefits and supplemental security income twice before.  An administrative law judge denied her most recent prior application on December 20, 2011.

After thoroughly reviewing the medical evidence and giving great weight to the medical opinions of two state agency medical consultants, the ALJ found that Trujillo has the residual functional capacity ("RFC")

> to perform light work . . . except she can only occasionally climb stairs and ramps, balance, stoop, crouch, kneel, or crawl; never climb ladders, ropes, or scaffolds; must avoid more than occasional exposure to extreme cold; is able to understand, remember, and carry out simple instructions; is able to maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task; can have occasional contact with the general public; and, can have superficial interactions with coworkers and supervisors.

Relying on the testimony of a vocational expert ("VE"), the ALJ found that with this RFC, Trujillo is unable to perform her past relevant work but can perform other jobs that exist in significant numbers in the national economy. The ALJ therefore concluded that Trujillo was not disabled from December 21, 2011, through the date of the ALJ's decision on September 9, 2015.

Trujillo appealed the ALJ's decision to the Appeals Council. With her appeal, she submitted new medical evidence, including a medical opinion from one of her treating physicians. After considering the new evidence to the extent it was temporally relevant, the Appeals Council denied review, thus making the ALJ's decision the Commissioner's final decision.

Trujillo filed an action in the district court seeking review of the Commissioner's decision. The court concluded that the ALJ would not have been required to give controlling weight to the new medical opinion that Trujillo submitted to the Appeals Council. And notwithstanding the inclusion of that opinion in the record, it held that

3

there was substantial evidence supporting the ALJ's decision. Accordingly, the district court affirmed the Commissioner's decision.

## II

We review the district court's decision de novo, applying the same standards it applied. See Hendron v. Colvin, 767 F.3d 951, 954 (10th Cir. 2014). We thus review the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. See id. "Substantial evidence" has long been defined to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). This "threshold for . . . evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). We are mindful that we may neither reweigh evidence nor substitute our judgment for the Commissioner's. See Hendron, 767 F.3d 954. Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Commissioner's] findings from being supported by substantial evidence." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

Trujillo argues that the ALJ's decision rests on legal error and is not supported by substantial evidence. More specifically, she challenges the ALJ's RFC findings that she is able to stand, walk, and use her hands and arms to the extent required for work at the "light" exertional level. She also challenges the omission of limitations

4

regarding concentrated exposure to vibration and certain hazards. Trujillo further contends that the ALJ erred in assessing the credibility of her alleged symptoms and physical limitations. Finally, she argues that the district court erred in concluding that the ALJ's decision was supported by substantial evidence in light of the new medical opinion that she submitted to the Appeals Council.

## A

In determining Trujillo's RFC, the ALJ relied heavily on two state-agency non-examining physicians' medical opinions. Together, Drs. Ryan and Bowers thoroughly reviewed Trujillo's medical records through October 2013. Both physicians concluded that she could perform work at the light exertional level, which includes the ability to stand, walk, and sit, with normal breaks, for about six hours in an eight-hour workday, and the ability to lift and carry ten pounds frequently and twenty pounds occasionally. See Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5-6 (1983) (explaining the physical requirements for light work). They also opined that Trujillo could push and pull to the same extent that she could lift and carry and that she has no manipulative limitations. The doctors stated that she should avoid concentrated exposure to vibration and hazards such as machinery and heights. Trujillo advances three reasons why the ALJ could not rely upon the Ryan/Bowers opinions as substantial evidence supporting the RFC determination. We address each in turn.

## 1

Trujillo first contends that in concluding she could stand and walk for up to six hours in an eight-hour workday, the Ryan/Bowers opinions were "stale" because they considered only her impairments as of October 2013, whereas the ALJ issued her decision almost two years later, in September 2015. See Chapo v. Astrue, 682 F.3d 1285, 1293 (10th Cir. 2012). Trujillo argues that although the ALJ could still rely on these opinions, SSR 96-6p required her to consider them in light of later-developed evidence.[2] But the ALJ did not ignore the later evidence. She thoroughly reviewed Trujillo's medical records, including records issued after the Ryan/Bowers opinions, and stated that she was considering the opinions in accordance with SSR 96-6p. She further determined that the opinions were entitled to great weight to the extent they were consistent with the medical evidence as a whole. Nothing in SSR 96-6p required more. "Where, as here, the ALJ indicates [s]he has considered all the evidence our practice is to take the ALJ at [her] word." Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009) (quotation omitted).

Trujillo also appears to contend that in light of later treatment records regarding chronic venous insufficiency in her left leg and her continuing complaints

---

[2] See SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) ("[T]he opinions of State agency medical and psychological consultants . . . can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical . . . consultant . . . .").

of pain, the Ryan/Bowers opinions are not substantial evidence supporting the ALJ's finding regarding her ability to stand and walk. In Chapo, we noted that an earlier medical opinion finding no back-related limitations was stale due to later obvious and material changes in the claimant's medical record, including an MRI revealing a broad-based disc bulge. See 682 F.3d at 1292. In this case, Trujillo points to later treatment records but fails to explain how they materially differ from the medical evidence predating the Ryan/Bowers opinions.[3] Nor does she develop any argument that the opinions are "overwhelmingly contradicted" by more recent evidence. O'Dell, 44 F.3d at 858. We will not craft such an argument for her. See Mays v. Colvin, 739 F.3d 569, 576 n.4 (10th Cir. 2014) (declining to address a perfunctory assertion "that the evidence supporting the opinion overwhelms the evidence that the ALJ actually discussed" when the claimant's "contentions consist[ed] mostly of record citations without further development").

## 2

The ALJ found that Trujillo can perform work at the light exertional level, which requires the ability to lift and carry ten pounds frequently and twenty pounds occasionally and which may involve pushing and pulling arm controls. See

---

[3] Trujillo cites evidence of one trip to the emergency room in 2014 for treatment of pain and swelling in her left leg after she had failed to take her anticoagulant medication for a week. She otherwise string cites record pages, ostensibly in support of her assertions that, (1) she reported pain on seven occasions after October 2013 and (2) "her doctors made myriad objective findings." Trujillo also refers to a table summarizing medical evidence in a later section of her brief but offers no accompanying analysis.

SSR 83-10, 1983 WL 31251, at *5. Trujillo acknowledges that this finding is consistent with the Ryan/Bowers opinions, and she again fails to show that the opinions are overwhelmingly contradicted by the limited evidence she cites that post-dated them.[4]

Trujillo nonetheless argues that the ALJ was required to discuss all the evidence she cites relating to her treatment for hand and arm pain and numbness—including evidence arising after the Ryan/Bowers opinions. She contends the ALJ rejected this later evidence when formulating her RFC. For this argument Trujillo relies on Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996), in which we stated that

> [t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

Id. (citation omitted). We later clarified that "[o]ur decision in Clifton was predicated on the fact that the ALJ's decision stated but a bare conclusion beyond meaningful judicial review." Wall, 561 F.3d at 1069 (quotation omitted). In Wall, we held that a remand for further explanation was not warranted because the ALJ's reasoning was "far more extensive" than in Clifton. Id. In this case, as in Wall, the

---

[4] In particular, Trujillo mischaracterizes a treatment record from May 2014, in which a physician did not find, as she claims, that she had "diminished grip" in her dominant right hand. Instead the physician found a 35-pound grip strength on the right hand. Moreover, that physician reported that she did "not see any signs of chronic pain" in Trujillo's hands and stated that "her thumb just appears to be giving way and not suffering from loss of strength."

ALJ's RFC finding is not a bare conclusion that we are unable to meaningfully review. Rather, the ALJ's extensive review of the evidence included nearly all the medical records that Trujillo cites, including the physicians' findings of tenderness related to Trujillo's upper extremities. And although Trujillo maintains the ALJ was required to discuss the evidence allegedly rejected, she makes no effort to demonstrate that the rejected evidence was "significantly probative" with respect to the ALJ's RFC determination relating to her ability to use her hands and arms. Clifton, 79 F.3d at 1010. Again, we will not develop an argument for her. See Mays, 739 F.3d at 576.

**3**

The Ryan/Bowers opinions stated that Trujillo should avoid concentrated exposure to vibration and hazards such as machinery and heights, explaining that these limitations are due to her lifetime anticoagulant therapy. In giving great weight to the Ryan/Bowers opinions, the ALJ did not explain why she omitted these environmental limitations from the RFC. Trujillo argues this was error under Haga v. Astrue, 482 F.3d 1205 (10th Cir. 2007), in which we held that absent an explanation, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding on nondisability." Id. at 1208. In Haga, we remanded to allow the ALJ to explain why he adopted some restrictions in a medical opinion while rejecting others. See id.

We agree with the Commissioner that a remand is not necessary here because Trujillo fails to show that any error was harmful. See Shinseki v. Sanders, 556 U.S.

9

396, 409-10 (2009) (placing the burden to show harmful error on the party challenging an agency's determination). Trujillo does not contend that any of the three jobs identified by the VE requires exposure to vibration. Though she asserts that two of those jobs "are performed around moving machinery," she does not argue that the third job—hand presser—is performed around moving machinery. Nor does she contend that hand presser jobs do not exist in significant numbers in the United States. Trujillo therefore fails to show any harmful error from the ALJ's failure to explain the omission from the RFC of these environmental limitations. Notwithstanding the absence of these limitations, the ALJ's decision is supported by substantial evidence that Trujillo can perform the hand-presser job. See Raymond v. Astrue, 621 F.3d 1269, 1273-75 (10th Cir. 2009) (affirming Commissioner's decision because there was no dispute that substantial evidence supported the ALJ's conclusion the claimant could perform one of the three jobs identified by a VE, which existed in significant numbers in the national economy).

**B**

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013). The ALJ found that Trujillo's allegations regarding her disabling symptoms were not entirely credible because Trujillo's daily activities were "not limited to the extent one would expect,

given [her] complaints of disabling symptoms and limitations." This discrepancy, the ALJ found, "weaken[e]d" Trujillo's credibility.

Trujillo raises various challenges to the ALJ's credibility determination. She first argues that like the adverse credibility finding in Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995), the ALJ's finding in this case is not linked to substantial evidence in the record. We have held that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ may consider a claimant's daily activities in assessing her allegations of disabling pain. See Newbold, 718 F.3d at 1267. Trujillo acknowledges, among other things, that the ALJ considered in part her "daily activities such as caring for herself and her disabled daughter, performing household chores, riding in a car, shopping once a month, paying bills and using a checkbook, watching television, using the computer, socializing, and attending doctor appointments." In Wilson v. Astrue, 602 F.3d 1136 (10th Cir. 2010), we upheld the ALJ's reliance on similar daily activities to find that the claimant had "the ability to care for herself, her home and her children." Id. at 1146 (relying on similar daily activities showing that the claimant had "the ability to care for herself, her home and her children"). Trujillo argues that the ALJ's credibility determination nonetheless remains "unexplained" because in the paragraph summarizing her daily activities the ALJ also discussed evidence consistent with Trujillo's allegations of disabling symptoms and limitations,

11

such as her reports of pain, numbness, and difficulty standing, reaching, walking, and sitting. But Trujillo's own summary in her opening brief of the daily activities on which the ALJ relied belies Trujillo's claim of ambiguity in the basis for the decision. As we have observed, "common sense, not technical perfection, is our guide." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

Trujillo also asserts that her ability to care for herself and her daughter does not, by itself, demonstrate that she can engage in light work activity on a sustained basis.[5] But the ALJ did not rely solely on that fact to conclude that Trujillo is not disabled. Rather, the ALJ appropriately cited Trujillo's daily activities as one factor supporting the conclusion that her alleged extreme physical limitations were not entirely credible. See Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (holding evidence of daily activities is relevant even where it does not, by itself, establish the claimant can engage in light or sedentary work activities).[6]

Trujillo next contends that the ALJ was required to consider her persistent attempts to find pain relief. Although this is a factor an ALJ should consider in

---

[5] Trujillo argues the ALJ's finding that she can handle the fiduciary obligations related to caring for her disabled daughter is "error" because it is not relevant to her physical limitations. But it was relevant to her claim of disability based on certain mental limitations, an issue she has not raised in this appeal.

[6] Citing Krauser v. Astrue, 638 F.3d 1324, 1332 (10th Cir. 2011), Trujillo asserts without elaboration that we need not defer to the ALJ's credibility finding because the "specific facts behind the generalities paint a very different picture." In Krauser, the ALJ mischaracterized the very limited extent of the claimant's daily activities in support of a finding that he could do full-time work at the medium exertional level. See id. at 1332-33. Trujillo cites to Krauser but does not point to any similar mischaracterization of the record by the ALJ.

12

assessing a claimant's credibility, an ALJ is not required to specifically discuss every factor in reaching a credibility determination. See Keyes-Zachary, 695 F.3d at 1167. In this case the ALJ thoroughly summarized Trujillo's medical records, which showed the extent to which she sought treatment for pain. This is sufficient to demonstrate the ALJ considered Trujillo's persistent attempts to find pain relief.

Trujillo further contends that the ALJ erred in basing her credibility determination on objective medical evidence because, unlike other medical conditions, fibromyalgia cannot be diagnosed by objective means such as laboratory tests or imaging. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).[7] Trujillo argues that her symptoms of widespread pain, fatigue, and depression are consistent with a fibromyalgia diagnosis. The ALJ did not find otherwise. She discussed Trujillo's fibromyalgia diagnosis and found it to be a severe impairment. The ALJ also thoroughly reviewed Trujillo's longitudinal medical record, including her treatment for fibromyalgia.

But having a pain-producing impairment does not necessarily mean a person is disabled. "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen,

---

[7] Trujillo complains that the ALJ did not discuss SSR 12-2p, but it is clear from the decision that the ALJ considered it.

13

801 F.2d 361, 362-63 (10th Cir. 1986) (quotation omitted). Accordingly, SSR 12-2p distinguishes between a fibromyalgia diagnosis and a finding that a person with that diagnosis is disabled. See SSR 12-2p, 2012 WL 3104869, at \*5. And it notes that an ALJ "must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." Id. at \*2. SSR 12-2p also stresses the importance of considering the claimant's longitudinal record in assessing the existence, severity, and disabling effects of fibromyalgia. See id. at \*3, \*5 (noting that fibromyalgia symptoms "may vary in severity over time"), \*6. We therefore reject Trujillo's perfunctory assertion that it was "improper" for the ALJ to rely on objective medical evidence in the longitudinal record.

Trujillo next argues that certain medical evidence is "contrary to" the ALJ's adverse credibility finding. She points to her reports of fatigue and other non-exertional symptoms, as well as to her providers' findings and observations she contends are consistent with her reported symptoms. Our review, however, is limited to whether the ALJ's finding is supported by substantial evidence. See Newbold, 718 F.3d at 1267. Rather than explaining how her medical records do not contain substantial evidence supporting the ALJ's credibility determination, Trujillo argues there is evidence in the record supporting the contrary conclusion that her allegations regarding disabling symptoms are credible. In doing so, she asks this court to reweigh the evidence. See Hamilton v. Sec'y of Health & Human Servs., 961 F.2d

14

1495, 1499 (10th Cir. 1992) (dismissing, as a request to reweigh the evidence, claimant's argument that there was evidence supporting his credibility).

Trujillo also argues the ALJ was "required to explain why [s]he discredited the medical findings" Trujillo cites because they are medical opinions under 20 C.F.R. § 404.1527(a)(1). She did not raise this contention in the district court. "Absent compelling reasons, we do not consider arguments that were not presented to the district court." Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994). Trujillo neither acknowledges her failure to raise the argument below, nor presents any compelling reason for us to consider it for the first time on appeal.

Finally, Trujillo argues that the ALJ erred in relying on the fact that she "has been counseled to exercise and change her habits in order to improve her pain." She suggests this finding is not supported by the record because the ALJ provided no citation to the record. But the medical records contain several instances of such counseling, including: encouraging Trujillo to "follow through with tai chi exercises"; recommending a "graded exercise program" for treatment of fibromyalgia; sharing that recommendation with another physician treating Trujillo; "[d]iscuss[ing] with the patient the importance of lifestyle change . . . regarding exercise, regarding swimming"; and "recommend[ing] a busy schedule of healthy activities," including "exercise." Trujillo asserts that the ALJ failed to explain how this advice is relevant to fibromyalgia, but it is undoubtedly relevant, at the very least, to the credibility of her allegations of extreme physical limitations.

15

Thus, Trujillo has not shown error in the ALJ's credibility determination.

**C**

Trujillo submitted to the Appeals Council additional treatment records and a new medical opinion from one of her treating physicians. Dr. Meyerowitz opined that as of June 2013, Trujillo could continuously stand for ten minutes and sit for fifteen minutes, and in an eight-hour workday she could stand and walk for a total of less than two hours and sit for about four hours. Dr. Meyerowitz further opined that Trujillo would need a job that permitted her to shift positions at will from sitting, standing, or walking. The opinion did not place any limitation on Trujillo's ability to lift and carry or otherwise use her hands and arms. After considering Dr. Meyerowitz's opinion and some of the new treatment records, the Appeals Council denied review.

Consistent with our decision in Vallejo v. Berryhill, 849 F.3d 951, 956 (10th Cir. 2017), the district court considered whether substantial evidence in the record, including the new Meyerowitz opinion, supported the Commissioner's final decision. The court concluded that the ALJ would not give Dr. Meyerowitz's opinion controlling weight under the treating physician rule because it was not consistent with other substantial evidence in the record. Emphasizing that the substantial evidence standard sets a low bar, the court held that the record contained substantial evidence supporting the ALJ's decision that Trujillo is not disabled notwithstanding Dr. Meyerowitz's opinion. It pointed to the evidence of daily activities, her physicians' recommendations that she increase her physical activity,

16

her month-long trip out of state to help her brother, her report to one provider that her medication was improving her symptoms, and her reports to medical providers rating her activities of daily living and quality of life at seven out of a possible ten.

Trujillo argues that the Appeals Council's decision is contrary to substantial evidence in the record. She also contends that the district court failed to perform a proper treating-physician analysis and that under such an analysis, Dr. Meyerowitz's opinion is entitled to controlling weight. Because the Appeals Council accepted Dr. Meyerowitz's opinion and other medical evidence into the record, we consider whether the Commissioner's decision is supported by substantial evidence in the record as a whole, including that opinion. See id. "Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted [opinion] if [it] had been available for the original hearing." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). Though "a peculiar task for a reviewing court," id., it is not an impossible one.

**1**

Under the regulations governing cases filed before March 27, 2017, the agency must assign controlling weight to a treating source's medical opinion that "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Trujillo argues that Dr. Meyerowitz's opinion meets this standard. Without further analysis, Dr. Meyerowitz cited positive objective signs relevant to the physical limitations stated in the opinion, including a

17

reduced range of motion in Trujillo's hips, tenderness, weight change, muscle atrophy, trigger points, muscle spasm, muscle weakness, positive straight leg raise, and antalgic gait.

Trujillo summarizes treatment records that she claims support these findings. Considering first Dr. Meyerowitz's own treatment records, she highlights the physician's June 2013 finding that Trujillo suffered a lower back spasm, her July 2013 observation that Trujillo appeared fatigued and stressed, and her August 2013 diagnosis of chronic pain. She does not mention, however, Dr. Meyerowitz's observation in June 2013 that she was in no distress, the findings that she had a normal gait in June, July, and August 2013, and the finding that she had no synovitis in August 2013. Trujillo apparently did not see Dr. Meyerowitz again until November 2014, at which point her gait was normal and her lower back pain was improved. She next highlights that in March 2015 Dr. Meyerowitz found that she was tender all over and had an antalgic and stiff gait. But Dr. Meyerowitz also noted at that time that Trujillo "ha[d] been out of state for over a month helping her brother." On this evidence, we agree with the district court that there is very little in Dr. Meyerowitz's own treatment records that suggests Trujillo has the extreme physical limitations stated in her opinion.

Trujillo also argues that her other physicians' findings and observations support Dr. Meyerowitz's opinion regarding her extreme physical limitations with respect to standing, walking, and sitting. But aside from some June 2015 X-rays showing degenerative changes and suspected small effusions in both knees, and mild

18

degenerative changes in both hips, all of the evidence Trujillo cites was in the record before the ALJ. [8]

Faced with this evidence, the ALJ concluded that it failed to provide strong support for Trujillo's allegations of disabling symptoms and limitations. The ALJ noted:

- three normal EMG and nerve conduction studies (one prior to 2012, one in 2013, and another in 2014);

- multiple observations upon examination that Trujillo was in no distress;

- multiple findings of (1) no cyanosis or edema in her extremities, (2) normal reflexes and pulses, (3) normal range of motion in her extremities and spine, and (4) no motor or sensory deficits;

- multiple findings that her gait and station were normal;

- several recommendations that Trujillo engage in exercise and change her lifestyle;

---

[8] Trujillo points to (1) her diagnosis with fibromyalgia; (2) several observations in 2012 and 2013 that she was in mild to moderate distress; (3) her 2012 report of hypersensitivity in her left leg due to multiple DVT; (4) findings of tenderness in 2012 and 2013—sometimes described as exquisite, significant, or marked—in her feet, lumbar spine, sacroiliac joint, and in her glutei, piriformis, and adductor muscles; (5) her receipt of trigger point injections in 2012 in her sacroiliac joints and in her glutei, piriformis, and adductor longus/brevis muscle groups; (6) a finding of decreased hip strength in 2012 based upon a positive trendelenburg test; (7) findings on one occasion in 2012 of loss of lumbar lordosis, moderate muscle spasms in her back, mild knee effusion with crepitus and abnormal patella tracking, and an observation that she was slow to get up from a chair and onto a table; (8) two findings of mildly decreased lumbar flexion in 2013; (9) one notation in 2013 that she ambulated unsteadily on her heels and toes; and (10) an increase in her Cymbalta dosage in 2013.

19

- a report in 2012 of improvement in her fibromyalgia symptoms with her prescribed medication;

- two negative straight leg-raise tests in 2012;

- a finding in 2012 that her spine was non-tender;

- X-rays in 2013 showing no degenerative changes in her feet or ankles;

- a laboratory test in 2013 showing no evidence of a connective tissue disorder;

- a finding of no tenderness in her feet in 2013;

- reports in 2013 and 2014 that her ability to complete daily activities and her quality of life were at a level of seven out of ten;

- a lab test in 2013 showing a rheumatoid factor in the normal range;

- a normal brain MRA in 2013;

- Trujillo's reports in 2013 that things seemed to be moving in a positive direction and that Cymbalta was working;

- and a flare-up of DVT in her left leg in 2014 when she failed to take her anticoagulation medication.

Trujillo does not address in her opening brief any of these findings by the ALJ in relation to Dr. Meyerowitz's opinion.

In sum, considering the specific objective signs on which Dr. Meyerowitz based her opinion, we conclude that the ALJ would not be required to find that Dr. Meyerowitz's opinion is well supported by medically acceptable clinical and

20

laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. As such, the opinion is not entitled to controlling weight.

**2**

Trujillo argues that the district court erred by not completing the remainder of the treating-physician analysis to determine what weight, less than controlling, the ALJ would have afforded Dr. Meyerowitz's opinion. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that even when the ALJ need not give a treating physician's opinion controlling weight, it is still entitled to deference and must be weighed based on the regulatory factors). She argues that all the relevant factors of the analysis support Dr. Meyerowitz's opinion, including the length, nature, and extent of the treatment relationship, the degree to which the opinion is supported by relevant evidence, the consistency between the opinion and the record as a whole, and whether the physician is a specialist in the area upon which an opinion is rendered. See id. Trujillo faults the district court's analysis with respect to some of these factors and its failure to address other factors.

Reviewing the district court's decision de novo, we conclude that the ALJ would have given Dr. Meyerowitz's opinion little weight. Like the ALJ, we need not expressly apply each of the relevant factors. See id. Two factors—the degree to which the opinion is supported by relevant evidence and the consistency between the opinion and the record as a whole—support our conclusion, which is based upon our preceding discussion of the record as a whole. Having concluded that the ALJ would give Dr. Meyerowitz's opinion little weight, we hold that the ALJ's decision is

21

supported by substantial evidence in the record even with the inclusion of that opinion.

## III

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge